IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kerri Ray, | ) | Civil Action No.  9:13-2013-SB-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Francis M. Simon and Beaufort County, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

This matter is before the Court on the Defendants' respective motions to dismiss
pursuant to Federal Rule of Civil Procedure 12.   The plaintiff has pled claims for sexual
harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et. seq*.
and various state law causes of action for breach of contract, negligence, and outrage
or intentional infliction of emotional distress.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A),
and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination
cases are referred to a United States Magistrate Judge for consideration.

**BACKGROUND**

Plaintiff alleges that, from on or about March 28, 2012, she was "employed by the
Defendant Beaufort County as a deputy clerk in the Beaufort County Probate Court."
[Doc. 1-1  ¶ 6.]  Plaintiff alleges that her supervisor was the Defendant Simon, the
Beaufort County Probate Judge.  *Id*. ¶ 7.  Plaintiff further alleges that, at all times

relevant hereto, the Defendant Simon was a "duly elected official of the Defendant Beaufort County", and was "an employee of the Defendant Beaufort County." *Id*. ¶¶ 8-10.

In her First Cause of Action, Plaintiff asserts a claim for sexual harassment in violation of Title VII against both Defendants. Plaintiff alleges that while employed by the Defendants she was "exposed to, and was the victim of, a hostile work environment as a result of sexual harassment by the [male] Defendant Francis M. Simon." *Id*. ¶ 14. Plaintiff has attached to her Complaint, and incorporated therein, a notarized statement detailing the following allegations of harassment:

- Simon allegedly invited the plaintiff into his office. He reminded her that she worked at his pleasure; offered his deceased wife's clothing to the plaintiff; wrote down his cell phone; and invited her over to his house to try them on. *Id*. at 10.

- After asking the plaintiff whether she had "spilled paint" on her toes, Simon purpotedly told the plaintiff on one occasion about a woman who wore low cut shirts and looked like a "whore." *Id*.

- Simon is accused of telling the plaintiff that Sun City was called "Sin City" because everyone was "'fucking' their brains out over there because all the men took Viagra and all the women were too old to get 'knocked up.'" *Id*.

- Simon also allegedly spoke to the plaintiff about his exploits with a black woman and about how, generally, black women love him. *Id*.

- On another occasion, Simon allegedly asked whether the plaintiff was wearing

"panties" under a sundress because she "didn't have to in a dress like that." *Id*.

• Simon allegedly told the plaintiff that he was growing out his mustache because the ladies "loved the tickle" and that he "loved to go downtown and was quite good at it." *Id*.

• Simon allegedly told the plaintiff, after she acknowledged that she was tired, that sex would help her sleep. *Id*. at 11.

• Simon allegedly shared with the plaintiff that he was "fucking so much that it was messing with his tennis game and his stamina." He also allegedly told the plaintiff that he could "out last and out perform any man half [his] age." *Id*.

• Simon is also alleged to have repeatedly joked about the plaintiff bringing him "milk" in front of other people and started calling the plaintiff "baby" around the office. *Id*. at 12.

Plaintiff alleges that the Defendant Beaufort County knew, or reasonably should have known, of the pattern of sexual harassment, intimidation or insult engaged in by the Defendant Simon as well as others, and failed to take prompt remedial action; that the pattern of sexual harassment, intimidation, or insult engaged in by Simon was so pervasive and long standing that the Defendant Beaufort County possessed not only actual, but constructive, knowledge of the harassment; and that as a result of the acts and conduct of the Defendants, Plaintiff suffered damages. *Id*. ¶ 20. As part of these allegations, Plaintiff also alleges that the Defendant Beaufort County vested Simon with the authority to grant or deny tangible job benefits to certain employees, including the

Plaintiff, and that Simon exercised said authority, reminding Plaintiff and other employees that he could fire them at any time, for any reason, or for no reason at all. *Id*. ¶ 22.

In her Second Cause of Action, Plaintiff alleges a claim for breach of contract against both Defendants. Specifically, Plaintiff alleges that at the time of her hiring, the Defendants represented and promised, both expressly and impliedly, that Plaintiff's work environment would be free from sexual harassment, intimidation, or insult, and that the Defendants breached that agreement by creating, maintaining, condoning, and failing to correct a working environment in which the Plaintiff, as well as others, were exposed to sexual harassment, intimidation, and insult.  *Id*. ¶¶ 25-26.

In her Third Cause of Action, Plaintiff asserts a claim for intentional infliction of emotional distress, or "outrage", against both Defendants. In this cause of action, Plaintiff alleges that the conduct engaged in by the Defendants was extreme and outrageous, thereby intentionally or recklessly inflicting severe emotional distress on her such that a reasonable person could not be expected to endure it. *Id*. ¶¶ 29-31.

In her Fourth Cause of Action (alleged against the Defendant Beaufort County only), Plaintiff asserts a claim for negligence. Specifically, Plaintiff alleges that the Defendant Beaufort County, acting through its agents, servants and employees, was "careless, negligent, reckless, willful, or wanton" during and immediately proceeding her employment by failing to adopt an effective policy for the discovery or reporting of sexual harassment committed by elected officials, by failing to properly instruct county

4

employees regarding the detection and reporting of sexual harassment committed by elected officials, by allowing a pervasive atmosphere of sexual harassment emanating from the Defendant Simon to exist for an extended period of time in the Beaufort County Probate Court, and by failing to "exercise that degree of care, caution and regard for the safety of its employees that a reasonably prudent employer would have exercised under the circumstances then and there existing." *Id*. ¶¶ 40-41.

Plaintiff seeks monetary damages.

## APPLICABLE LAW

### MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief.  In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.  *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 557 (2007)).  Stated differently, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)).

## DISCUSSION

This is a related case.  The same Defendants are the subject of a suit brought by a Tiffany Poloschan, C.A. No. 9-13-CV-1937-SB-BM, for comparable conduct.  Indeed, with the exception of certain causes not included, here, the respective Complaint and Amended Complaint of the two cases are nearly verbatim.  And, while the sworn statements of Poloschan, there, and Ray, here, are different in their specifics, the sum effect of those statements is to allege essentially the same untoward conduct: that Defendant Simon habitually and sexually harassed them.  The Honorable Bristow Marchant has already issued an exhaustive Report and Recommendation in that case, which recommended dismissal of some claims of the plaintiff but not all.  *See Poloschan v. Simon*, C.A. No. 9-13-CV-1937-SB-BM (D.S.C. Jan. 24, 2014) [Doc. 42].

Due to the procedural posture at the motion to dismiss stage, the similarity of the two pleadings, and the presence of legal issues suitable for resolution without regard to some of the factual differences between the two, Judge Marchant's recommendation meets most of the arguments at issue here, now.  Indeed, even the motions and briefs of the parties in the two cases are identical in many material respects.  The undersigned, therefore, would plagiarize heavily from the recommendation in

6

*Poloschan*, careful to not borrow where it is inapplicable.

## I.    Defendant Beaufort County

Defendant Beaufort County seeks dismissal as a party Defendant, *in toto*, because Plaintiff was never at any time an employee of Beaufort County, nor has this Defendant engaged in any outrageous or defamatory conduct. Plaintiff argues in response that she has specifically alleged in her Complaint that she was an employee of the County [see Doc. 1-1 ¶¶ 6, 7, 14, 15] and that on a Rule 12 motion to dismiss the Court is required to accept the allegations in the pleading as true. On this basis, she would distinguish the cases cited by the County, as inapposite, for their resolution at summary judgment.  However, the Court is not required, even on a Rule 12 motion to dismiss, to accept bald assertions and conclusions of law that fail to set forth a "plausible" claim for relief. *Iqbal*, 129 S. Ct. at 1949 (finding that a Complaint must state a plausible claim for relief on its face); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law are not sufficient to avoid dismissal of a complaint for failure to state a proper claim."); *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (finding that when considering Rule 12 motion to dismiss, Court need not accept "unwarranted deductions" or "sweeping legal conclusions cast in the form of factual allegations"); *see Frey v. City of Herculaneum*, 44 F.3d at 671 ("Complaint must contain facts which state a claim as a matter of law and must not be conclusory").

Admittedly, the plaintiff only alleges, here, that Defendant Beaufort County is her

7

employer and that Defendant Simon was her supervisor. [Doc. 1-1 ¶¶ 6, 7.]   And, further, in her notarized statement, she indicates that she was a deputy clerk of the Probate Court [Doc. 1-1 at 10] and, therefore, did not work for Simon maybe in the way an administrative assistant or law clerk more proximately would.  Of course, the Court does not know and may not surmise about the physical location or work arrangement of a deputy clerk to the Probate Judge.  It is not alleged.  It is, however, irrelevant.

Rather, in South Carolina a county simply has "no authority over the personnel actions of Probate Court employees" because such employees are "employees of an elected official, the Probate Judge, and [are] not County employees . . . ." *Walters v. Orangeburg County*, No. 99-1115, 2000 WL 33417008, at * 5 (D.S.C. Aug. 1, 2001) (internal citations omitted) (citing *Amos-Goodwin v. Charleston County Council*,1998 WL 610650, at *1 (4th Cir. Aug. 27, 1998) (finding that employees of the Probate Court were at-will employees of the Probate Judge, and that the authority of the County to employ and discharge County personnel did not extend to any personnel employed in departments or agencies under an elected official)).  So, this is not a factual inquiry to be explored through discovery.  It is a legal one.

As the Fourth Circuit recognized in *Amos-Goodwin*, the commission of the clerks of court specifically state that they are hired as "clerks" of the probate court and reference S.C. Code Ann. § 14-23-1090, which states that "[t]he judge of probate may appoint a clerk and may remove him at his pleasure," S.C. Code Ann. § 14-23-1090. *Amos-Goodwin*, 161 F.3d at 1998 WL 610650, at *1.  The plaintiff is a deputy clerk of

the probate court and thus an at-will employee of the probate judge. *See* S.C.Code Ann. §§ 14-23-1090, 62-1-307 & cmt.; *see also* S.C.Code Ann. § 4-9-30(7) (authority of county government to employ and discharge county personnel does not extend to "any personnel employed in departments or agencies under the direction of an elected official").

Plaintiff has cited to no legal authority, nor to any factual allegations in her Complaint, to establish that she would in any way have a "plausible" claim that she was an employee of Beaufort County and not Simon during the time period at issue. Therefore, as Beaufort County could not have been Plaintiff's "employer" for purposes of a Title VII civil rights action, the County is entitled to dismissal as a party Defendant from Plaintiff's First Cause of Action for sexual harassment. *See Walters*, 2000 WL 33417008, at * 2 ("A Defendant must be an employer within the definition of Title VII as a jurisdictional prerequisite to the maintenance of a Title VII action"]; *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"); *see also Iqbal*, 129 S. Ct. at 1949-1950 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

Since Plaintiff did not work for Beaufort County and Beaufort County was not her employer, she also cannot maintain a negligence claim against this Defendant for allegedly failing to adopt an effective policy for the discovery and reporting of sexual

9

harassment, or for allowing a pervasive atmosphere of sexual harassment to exist in Judge Simon's office. *See Amos-Goodwin*,1998 WL 610650, at *2 (holding that since appellants were at-will employees of the Probate Judge and not of the County, they had no right to avail themselves of any grievance procedures established for County employees]; *Wambach v. Cheeks*, 2009 WL 2632176, at * 3 (D.S.C. Aug. 25, 2009) (finding counties have no administrative or supervisory authority over Probate Courts]; *cf. Allen v. Fidelity and Deposit Co.*, 515 F. Supp. 1185, 1189-1191 (D.S.C. 1981) ("To allow the County to be held accountable for the actions of [an elected official] over whom it has no control as to the manner in which they perform their official duties and whom it cannot hire, fire, discipline or train relative to the performance of the duties of their offices, would be to subject the County to unbridled and unlimited liability over which it has no control and over which it is prevented from exercising such control"]; *Riley v. County of Cook*, 682 F. Supp. 2d 856, 860 (N.D. Il. 2010) ("Because the sheriff is an independently-elected official, he answers directly to the electorate and does not have a master/servant relationship with the county [ ]. Since the County cannot control the actions taken by [the Sheriff's] Office, it cannot be charged with vicarious liability . . . .") (internal citations omitted). Therefore, Plaintiff's Second Cause of Action for negligence (asserted against the Defendant Beaufort County only) should be dismissed.

Similarly, with respect to Plaintiff's Third Cause of Action for breach of contract, since the allegations of Plaintiff's Complaint considered in conjunction with the applicable law clearly establishes that she was not an employee of the County, she

cannot have had a "contract" of employment with the County for the County to have breached. See S.C. Code Ann. §§ 14-23-1090 (stating Probate Court Clerks serve at the pleasure of the Probate Judge]; 4-9-30(7) (authorizing Counties to "develop personnel system policies and procedures for County employees by which all County employee are regulated except those elected directly by the people . . . . This employment and discharge authority does not extend to any personnel employed in departments or agencies under the direction of an elected official . . . ."); *see also Amos-Goodwin*, 161 F.3d 1 (finding Clerks of the Probate Court are at-will employees of the Probate Judge); *Perrine v. G4S Solutions (USA), Inc.*, No. 11-1210, 2011 WL 3563110, at *2 (D.S.C. Aug. 9, 2011) ("[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'") (quoting *Amason v. P. K. Management, LLC*, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) (stating Plaintiff has burden of alleging facts sufficient to state all the elements of a claim). Therefore, Beaufort County is also entitled to dismissal as a party Defendant from Plaintiff's Third Cause of Action for breach of contract. *See Murphy v. Jefferson Pilot Communications Co.*, 657 F. Supp.2d 683, 693 (D.S.C. 2008) ("Only parties to a contract may be sued for a breach of contract cause of action.").

    With respect to Plaintiff's Fourth Cause of Action for outrage, Plaintiff concedes

that, even if the County were her employer, this claim is barred by the exclusivity provision of the South Carolina Workers' Compensation Act, and consents to the dismissal of the County as a party Defendant in this cause of action.  (Pl. Resp. at 6); *see* S.C. Code Ann. § 42-1-540. In any event, all of the allegedly outrageous conduct set forth in the allegations in the Complaint was committed and perpetrated by the Defendant Simon. Beaufort County is not responsible for the actions of Judge Simon, and no where in Plaintiff's Complaint or the attached Exhibit A to the Complaint does Plaintiff allege any conduct by employees of Beaufort County to establish a claim for outrage against Beaufort County. The County cannot be held vicariously liable for any actions taken by Judge Simon. *See Robinson v. McBride*, No. 13-352, 2013 WL 2099491, at * 4 (D.S.C. Apr. 12, 2013) (finding that counties do not exercise administrative or supervisory authority over Probate Courts], *adopted by*, 2013 WL 2099707 (D.S.C. May 14, 2013); *Allen*, 515 F. Supp. at 1189-1191 (finding county cannot be held accountable for the actions of elected official over whom it has no control]; *Riley*, 682 F. Supp. 2d at 860 ("Since the County cannot control the actions taken by [an elected official] it cannot be charged with vicarious liability]. Therefore, Beaufort County is entitled to dismissal as a party Defendant on Plaintiff's outrage claim.

In conclusion, as Defendant Beaufort County is entitled to dismissal from all four (4) of the Causes of Action asserted in the Complaint, it should be dismissed as a party Defendant in this case.  Further, as this Defendant is the only named Defendant in

12

Plaintiff's Second Cause of Action for negligence, this Cause of Action should be dismissed, *in toto*.

## II.    Defendant Francis Simon

With respect to Defendant Simon, he seeks dismissal of Plaintiff's Second Cause of Action for breach of contract and Third Cause of Action for intentional infliction of emotional distress.[1]

### A.    Breach of Contract

Plaintiff alleges in her Amended Complaint that, from on or about April 2012 through on or about May 18, 2012, she was supervised by the Defendant Simon as a Deputy Clerk in the Beaufort County Probate Court. Simon was the Beaufort County Probate Judge. [Doc. 1-1 ¶¶ 6-8.] Plaintiff further alleges that during her period of employment she was exposed to, and was the victim of, a hostile work environment as a result of sexual harassment by the Defendant Simon, and that she was owed an affirmative duty by the Defendant to maintain a work environment free from sexual harassment, intimidation, or insult as well as a duty by the Defendant to remedy the effects of such practices. [Doc. 1-1 ¶¶ 14-15, 18-19.] Finally, Plaintiff alleges that at the time of her hiring, the Defendant "represented and promised, both expressly and impliedly, that the Plaintiff's work environment would be free from sexual harassment, intimidation, or insult . . . [and that the Defendant] breached aforesaid agreement by

---

[1]  Simon is not named as a Defendant in Plaintiff's Fourth Cause of Action for negligence and has not moved to dismiss Plaintiff's First Cause of Action alleging sexual harassment.

creating, maintaining, condoning, and failing to correct a working environment in which the Plaintiff, as well as others, were exposed to sexual harassment, intimidation, and insult." [Doc. 1-1 ¶¶ 25-26.]   As an initial matter, it is somewhat incongruous that the plaintiff would argue that she was not employed by Simon but then that he breached some contract for precisely such non-existent employment.  And, these are not legal theories pled in the alternative, they are factual ones.  Regardless, the claim cannot survive.

South Carolina law provides that "termination of an at-will employee normally does not give rise to a cause of action for breach of contract." *Conner v. City of Forest Acres*, 560 S.E.2d 606, 610 (S.C. 2002); *Williams v. Riedman*, 529 S.E.2d 28, 32 (S.C. Ct. App. 2000). It is undisputed that the plaintiff's employment was at-will. As is typical, however, the plaintiff would argue that the at-will status has been modified through promises, of Simon.

Under certain circumstances, it is true, that an at-will employment arrangement can be modified by an oral promise, *see Prescott v. Farmers Tel. Co-op., Inc.*, 516 S.E.2d 923, 926 (S.C. 1999), or by "[m]andatory, progressive discipline procedures . . .," set out in a handbook or policy, for instance. *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005).

In response on motion to dismiss, the plaintiff has identified only one basis for possible contract. Specifically, the plaintiff contends that Defendant Simon "represented and promised, both expressly and impliedly, that the Plaintiff's work environment would

14

be free from sexual harassment, intimidation, or insult . . . [and that the Defendant] breached aforesaid agreement by creating, maintaining, condoning, and failing to correct a working environment in which the Plaintiff, as well as others, were exposed to sexual harassment, intimidation, and insult." [Doc. 1-1 ¶¶ 25-26.]    The plaintiff does not reference any handbook or policy or even any specific conversation in which such promise was made.

But, as a matter of law, generalized harassment and anti-discrimination promises or policies in a handbook do not constitute implied employment contracts. *See Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp.2d 540, 560 (D.S.C. 2009) (granting summary judgment for employer on breach of implied contract claim and holding that, "This Court previously has held that the defendant's nondiscrimination policy 'does not constitute a promise altering the at-will employment relationship and giving rise to a breach-of-contract claim.' . . . The non-discrimination language in the defendant's Handbook will not sustain the plaintiff's cause of action for breach of contract."); *Fyall v. ATC/Ancon of South Carolina, L.P and Nat'l Express Corp.*, 2005 WL 2656962, at *4 (D.S.C. October 18, 2005.). They are too indefinite. *See id.*

Plaintiff's Amended Complaint and attachments simply fail to include any factual allegations relating to any specific language from any actual contract, employee handbook, or even Judge Simon himself, to establish a plausible claim "on its face" that she was not an at-will employee.  *Iqbal*, 129 S.Ct. at 1949.    In fact, in the plaintiff's notarized statement she has said that Defendant Simon was not even present in the

15

first weeks of her employment, available to make such a promise, for the recent loss of his wife. [Doc. 1-1 at 10.]  Rather, Plaintiff only generically alleges that at the time of her hiring the Defendant "represented and promised, both expressly and impliedly, that the Plaintiff's work environment would be free from sexual harassment, intimidation, or insult".  [Doc. 1-1 ¶¶ 25.]  This is nothing more than an allegation that the Defendant had a general policy of nondiscrimination; indeed, it is even less. And, as stated such policies (assuming the Defendant did in fact have such a policy for purposes of considering Defendant's motion to dismiss) have been routinely held not to, by themselves, constitute a "contract".  *See Ford v. Musashi S.C., Inc*., No. 07-3734, 2008 WL 4414385 (D.S.C. Sept. 23, 2008), *adopting in part and denying in part*, 2008 WL 4414497, at * 3 (D.S.C. July 11, 2008) ("[U]nder South Carolina law where an employee handbook provides a general policy statement of nondiscrimination such a 'provision does not constitute a promise altering the at-will employment relationship'").

Therefore Plaintiff's breach of contract claim should be dismissed as against Defendant Simon, as well.

### B.    Intentional Infliction of Emotional Distress

Plaintiff alleges in her Complaint that while she was employed by the Defendant she was exposed to, and was the victim of, a hostile work environment as a result of sexual harassment by the Defendant which constituted a pervasive and long standing pattern of harassment, intimidation or insult; that during the course of which Simon also repeatedly reminded Plaintiff that he could fire her at any time, for any reason, or for no

16

reason at all; and that this conduct was extreme and outrageous and constituted the State tort of intentional infliction of emotional distress (also known as "outrage"). [See generally Doc. 1-1 ¶¶ 14-15, 20-22, 29-31.]

While the initial pleading includes these general and conclusory allegations, as described in the Background section above, Plaintiff sets out the specific factual details underlying this claim in the attachment to her Complaint. Plaintiff alleges, among other things, that Simon invited the plaintiff into his office. *Id.* at 10. He reminded her that she worked at his pleasure; offered his deceased wife's clothing to the plaintiff; wrote down his cell phone; and invited her over to his house to try them on. *Id.* at 10. The plaintiff also alleges that, on another occasion, after asking the plaintiff whether she had "spilled paint" on her toes, Simon told the plaintiff about a woman who wore low cut shirts and looked like a "whore." *Id.* Simon is alleged to have told the plaintiff that Sun City was called "Sin City" because everyone was "'fucking' their brains out over there because all the men took Viagra and all the women were too old to get 'knocked up.'" *Id.* Simon also allegedly spoke to the plaintiff about his exploits with a black woman and about how, generally, black women love him. *Id.* On another occasion, Simon allegedly asked whether the plaintiff was wearing "panties" under her sundress because she "didn't have to in a dress like that." *Id.* It is further alleged that Simon told the plaintiff that he was growing out his mustache because the ladies "loved the tickle" and that he "loved to go downtown and was quite good at it." *Id.* The plaintiff alleges that Simon allegedly told her, after she acknowledged that she was tired, that sex would help her

17

sleep.  *Id*. at 11.  Simon also allegedly shared with the plaintiff that he was "fucking so much that it was messing with his tennis game and his stamina."  *Id*. at 11. He also allegedly told the plaintiff that he could "out last and out perform any man half [his] age."  *Id*.  Lastly, Simon is alleged to have repeatedly joked about the plaintiff bringing him "milk" in front of other people and started calling the plaintiff "baby" around the office. *Id*. at 12.

Plaintiff alleges she found these comments severe [Doc. 1-1 ¶ 31] and extremely offensive.  She alleges that, as a single parent, shew was "scared" that she would lose her job.  *Id.* at 11.  After one incident with Defendant Simon, a co-worker came to check on the plaintiff.  "[The plaintiff] just started crying."  *Id*.  She has sworn to feeling afraid, uncomfortable, and inappropriate.  *Id.* at 12.

Defendant Simon argues, *inter alia*, that Plaintiff's outrage claim is barred by the South Carolina Workers Compensation Act. S.C. Code Ann. § 42-1-540.  S.C. Code. Ann. § 42-1-540.  That statute states:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

*Id*.  Additionally, "Every employer and employee . . . shall be presumed to have accepted the provisions of [the Act] respectively to pay and accept compensation for

18

personal injury . . . arising out of and in the course of the employment and shall be bound thereby."  S.C. Code § 42-1-310.

The plaintiff's claim for intentional infliction of emotional distress falls within the ambit of the Act, such that it is the exclusive remedy as against her employer.  *See McClain v. Pactiv Corp*., 602 S.E.2d 87, 89 (S.C. Ct. App. 2004) ("[I]ntentional infliction of emotional distress constitutes a personal injury that falls within the scope of the Act."); *Dickert v. Metropolitan Life Ins. Co.*, 428 S.E.2d 700, 701 (S.C. 1993) (holding that intentional infliction of emotional distress is within the scope of the Act); *Loges v. Mack Trucks, Inc.*, 417 S.E.2d 538 (S.C.1992) ("[A]llegations of intentional infliction of emotional distress, assault and battery as these constitute personal injuries within the scope of the Act.") (*citing  Powell v. Vulcan Materials Co.*, 384 S.E.2d 725 (S.C. 1989); *Thompson v. J.A. Jones Const. Co.*, 19 S.E.2d 226 (S.C. 1942).

However, the Supreme Court has also found that an exception to the exclusivity provision of the Workers Compensation Act applies where the allegedly intentional conduct was committed by the employer through an "alter ego" of the employer itself. *See Edens v. Bellini*, 597 S.E.2d 863, 869-870 (S.C. Ct. App. 2004) ("An exception to the exclusivity provision exists where the injury is not accidental but rather results from the intentional act of the employer or its alter ego.").  At this stage of the proceedings, considered pursuant to the standards of a Rule 12 Motion to Dismiss, Plaintiff has set forth a plausible claim "on its face" that Simon and her employer are one and the same. *See Dickert*, 428 S.E.2d at 701 (finding that to fall under this exception, the tortfeasor

must be a "dominant" corporate owner or officer of the employer]; *Sturgis v. Safe Passage, Inc.*, No. 2000-CP-46-1092, 2002 WL 1362078 at * 3 (S.C. Comm. Pl. Mar. 11, 2002) (noting difference between assailant merely being a supervisory employee or a person who can genuinely be characterized as the alter-ego of the corporation). The Court is not aware of any South Carolina decision extending the exception to probate judges specifically. But, the policy considerations to for doing seem to still present.

Therefore, the Defendant Simon is not entitled to dismissal of Plaintiff's outrage claim on this basis.

While Simon's conduct might fall under an exception to the exclusivity provision of the South Carolina Workers Compensation Act, however, a claim against Simon under an "alter ego" theory would still be the same as suing a governmental entity itself, and the Defendant correctly notes that claims for outrage or intentional infliction of emotional distress against a governmental entity (including an individual government employee in their official capacity) are barred by the South Carolina Tort Claims Act (SCTCA). *See* S.C.Code Ann. § 15-78-30(f) (excluding claims for intentional infliction of emotional harm under the SCTCA). But, the South Carolina Tort claims Act does not grant an employee immunity from suit if it is proved that his conduct was not within the official scope of his employment, or he acts with actual malice, or he has an intent to harm; s*ee McCall v. Williams*, 52 F. Supp. 2d 611, 615 (D.S.C. 1999) ("SCTCA does not grant an employee 'immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud,

20

actual malice, intent to harm, or a crime involving moral turpitude.'") (quoting S.C. Code § 15-78-70(b); *Brown v. County of Berkeley*, 622 S.E.2d 533, 537-538 (S.C. 2005) [same]; *Sanders v. Prince*, 403 S.E.2d 640, 643 (S.C. 1991) (same); and Plaintiff correctly notes in her reply brief that, notwithstanding the exclusion of outrage claims against governmental entities under the South Carolina Tort Claims Act, she can still sue Simon for his conduct individually. *See Southern Holdings, Inc. v. Horry County, South Carolina*, No. 02-1859, 2007 WL 896111, at *8-9 (D.S.C. Mar. 21, 2007 (discussing allowing claim against Defendant in individual capacity where Defendant is alleged to have acted outside the scope of his employment).

Here, Plaintiff specifically alleges that Simon subjected her to vulgar and graphic sexual comments and related inappropriate conduct and that only after he was sued by Tiffany Poloschan did he try to apologize for, or otherwise explain, his behavior to the plaintiff. [Doc. 1-1 at 12.] She also specifically alleges, in her Complaint, that the defendant intentionally or recklessly inflicted severe emotional distress" upon her. *Id*. ¶ 30. At least for purposes of Defendant's motion to dismiss under the standards of Rule 12, these allegations aver that Defendant Simon acted with an intent to harm sufficient to fall outside of the official capacity restrictions of the South Carolina Tort Claims Act. *See McCall*, 52 F. Supp.2d at 615 (finding that SCTCA does not grant an employee immunity from suit and liability if the employee's conduct constituted actual malice or an intent to harm]; *Swicegood v. Lott*, 665 S.E.2d 211, 213-214 (S.C. Ct. App. 2011); *Austen v. Catterton Partners V, LP*, 709 F. Supp. 2d 172 (D. Conn. 2010) (Plaintiff only

required to provide adequate notice to the defendant of the basis for the lawsuit and to make a claim plausible]. Therefore, at least at this stage of the proceedings, Defendant Simon is not entitled to dismissal of Plaintiff's outrage claim on the grounds that it is barred by the South Carolina Tort Claims Act. *See Francis, et al, v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (finding plausibility standard met where the Plaintiff "articulate[s] facts , when accepted as true," that state a plausibility of entitlement to relief]; *see Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (finding requirement is that Plaintiff's allegations provide sufficient notice to defendants of the plaintiff's claim).

Therefore, the Defendant is also not entitled to dismissal of Plaintiff's outrage claim on this basis.

Finally, Defendant argues that Plaintiff's allegations simply do not meet the high standard for maintaining a claim of outrage under South Carolina law.  For instance, the defendant emphasizes that the plaintiff's allegations consist only of commentary regarding Simon's own sex life as well as commentary regarding whether undergarments are required for ankle length sun dresses and that sex helps people sleep.  In order to recover on a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that the Defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency, and that the emotional distress suffered by the Plaintiff was so severe that "no reasonable [person] could be expected to endure it." *See Argoe v. Three Rivers Behavioral Health, L.L.C.*, 710 S.E.2d 67, 74 (S.C. 2011); *Wright v. Sparrow*, 381 S.E.2d 503, 505 (S.C. Ct. App. 1989); *Ford*

22

*v. Hutson*, 276 S.E.2d 776, 778 (S.C. 1981); *Shipman v. Glenn*, 443 S.E.2d 921 (S.C. Ct. App. 1994); *Gattison v. South Carolina State College*, 456 S.E.2d 414 (S.C. Ct. App. 1995). Defendant contends that Plaintiff's allegations do not meet this standard. *See also Corder v. Champion Road Machinery International Corporation*, 324 S.E.2d 79, 81 (S.C. Ct. App. 1984) (citing Hudson v. Zenith Engraving Company, Inc., 259 S.E.2d 812, 814 (1979)) (finding that in South Carolina, a plaintiff can only succeed on a claim for intentional infliction of emotional distress "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."); *cf. Jones v. Clinton*, 990 F. Supp. 657, 678 (E.D. Ark. 1998) (finding conclusory statement by counselor that Plaintiff experienced various symptoms as a result of alleged sex discrimination insufficient to establish severe emotional distress component); *DeCecco v. University of South Carolina*, 918 F. Supp. 2d 471, 520 (D.S.C. 2013).

Although Defendant is correct that courts have dismissed outrage claims on Rule 12 motions to dismiss, given the particular nature of Plaintiff's allegations as set forth by Plaintiff in the attachment to the Complaint, including specifically that the allegedly outrageous conduct was perpetrated not by a co-worker, but by Plaintiff's boss, who had authority over her as well as the power to hire and fire her, the undersigned does not find that dismissal of this claim at this time is warranted. *See Gattison,* 456 S.E.2d at 416 (noting that conduct constituting "hostile or abusive encounters" or "coercive or

oppressive conduct" can give rise to an outrage claim under South Carolina law); *Paroline v. Unisys Corp.*, 879 F.2d 100, 113 (4th Cir. 1989) (noting that "sexual harassment may give rise to a claim for intentional infliction of emotional distress under some circumstances"], *aff'd in part, rev'd in non-relevant part*, 900 F.2d 27 (4th Cir. 1990); *see also Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 146 (S.D.N.Y. 2004) (finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"). Moreover, as recounted twice, the plaintiff's allegations if believed include graphic and repeated advances that are far out of societal bounds if true.

While Defendant may ultimately be able to prevail on this claim at summary judgment, Defendant Simon's motion to dismiss Plaintiff's Third Cause of Action for intentional infliction of emotional distress pursuant to a Rule 12 motion should be denied. *See Twombly*, 550 U.S. at 555 (stating that a complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations must only be enough to raise a right to relief above the speculative level]; *see also Austen*, 709 F. Supp. 2d at 172 (noting that Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]]; and, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very

remote and unlikely") (citing *Twombly*, 550 U.S. at 556 (internal quotation marks and citations omitted); *Wolman v. Tose*, 467 F.2d 29, 33, n.5 (4th Cir. 1972) ("Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the Court to infer that all of the required elements of the cause of action are present.").

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is recommended that the Defendant Beaufort County's motion to dismiss [Docs. 5] be GRANTED and Defendant Francis Simon's motion to dismiss [Doc. 6] be GRANTED, in part, and DENIED in part.  Specifically, the Defendant Beaufort County's motion to dismiss [Doc. 5] should be GRANTED, *in toto*, and Beaufort County should be dismissed as a party Defendant in this case. Further, as the Defendant Beaufort County is the only named Defendant in Plaintiff's Fourth Cause of Action for negligence, that Cause of Action should also be dismissed altogether.  With respect to the Defendant Francis Simon, his motion to dismiss should be GRANTED as to Plaintiff's Second Cause of Action for breach of contract and that Cause of Action, therefore, should be dismissed. Defendant Simon's motion to dismiss Plaintiff's Third Cause of Action for outrage, however, should be DENIED.

IT IS SO RECOMMENDED.

s/Bruce Howe  Hendricks
United States Magistrate Judge

February 14, 2014
Charleston, South Carolina.

25

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).